FILED

2015 NOV 10 PM 2:46

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | <u>SUPERSEDING</u> |
| Plaintiff, | ) | <u>INDICTMENT</u> |
| | ) | |
| v. | ) | Case No. 4:15CR00155 |
| | ) | |
| | ) | JUDGE SARA LIOI |
| | ) | |
| R. ALLEN SINCLAIR, | ) | Title 18, United States Code, |
| | ) | Sections 1344(1), 1344(2) & 2 |
| Defendant. | ) | |

The Grand Jury charges:

### GENERAL ALLEGATIONS

At all times relevant to this Superseding Indictment or other times specified:

1. Defendant R. ALLEN SINCLAIR ("SINCLAIR") was a principal of and operated Newport Investments, LLC ("NI") and Newport Development, Inc. ("ND"), both located at 11 Overhill Road, Youngstown, Ohio. ND served as the parent and management company for NI. SINCLAIR's relative, K.S., an individual known to the Grand Jury but not charged herein, was the sole shareholder of ND and the sole member of NI.

2. SINCLAIR advertised NI as a real estate investment company primarily in the business of buying, renovating, and selling residential real estate properties.

3. SINCLAIR was a licensed attorney in the State of Ohio, with a private practice also located at 11 Overhill Road, Youngstown, Ohio.

4. Huntington National Bank, Wells Fargo Bank, Ohio Savings Bank, JP Morgan Chase (including its subsidiary Chase Home Finance), and Bank of America were financial institutions, as defined in 18 U.S.C. § 20, in that their deposits were insured by the Federal Deposit Insurance Corporation ("FDIC").

5. S.B., an individual known to the Grand Jury but not charged herein, was the administrative assistant to SINCLAIR and NI. S.B. was also an employee of NI, in addition to holding various corporate officer positions at ND. S.B. also served as a notary public on deed transfers, communicated directly with the sellers, prepared closing documents, managed the land-contract tenants, and attempted to secure financing for land-contract tenants to purchase the seller's homes.

6. SINCLAIR, by and through NI and ND, solicited money from multiple investors within the Northern District of Ohio, Eastern Division. SINCLAIR enticed investors by offering an opportunity to earn interest rates in excess of 10%.

**Statutory Violations**

7. From in and around December 2005, through in and around September 2006, SINCLAIR transferred title from the individual sellers to trusts he created. In most instances, NI served as the trustee for the trusts SINCLAIR created. The beneficiaries of the trusts varied to include the sellers, ND, NI, K.S., and S.B.

8. SINCLAIR fraudulently represented to the sellers that the trusts had assumed their estimated mortgage balances as reflected in the HUD-1 closing statements and would make future mortgage payments until the property sold. In reliance on SINCLAIR's false statements,

the sellers vacated their residences, moved into other homes, obligated themselves to new mortgages and believed they were relieved from their prior mortgage obligations.

9. In fact, SINCLAIR used the trusts to disguise unauthorized assumptions of the mortgages as he did not seek the lenders' prior written consent in compliance with the mortgages' terms and conditions. In some instances, SINCLAIR also had the sellers assign their beneficial interests in the trusts back to ND or NI, thereby stripping the sellers of any remaining interests in their real estate. Through this conduct, SINCLAIR took the lenders' collateral.

10. SINCLAIR attempted to insulate himself and his entities from any liability to the lenders for the unauthorized assumptions by preparing Standard Real Estate Purchase and Sale Agreements and Acknowledgments which recharacterized the transactions as "subject to" transfers. The sellers purportedly signed these documents.

11. After making mortgage payments for a period of time, SINCLAIR stopped making payments on the pre-existing loans without notifying the sellers. SINCLAIR failed to make mortgage payments despite receiving rental payments from land-contract tenants placed in the homes by SINCLAIR or S.B. The sellers were unaware that they were still obligated to make payments under their original mortgages.

12. Upon SINCLAIR's failure to make mortgage payments, the lenders sent default notices to SINCLAIR and eventually instituted foreclosure proceedings. SINCLAIR did not communicate with the sellers about the default or commencement of the foreclosure actions. Rather, the sellers generally learned about the foreclosure actions upon being sued by the lenders.

13. The lenders enforced their security interests in their collateral through foreclosure proceedings. By taking title to the sellers' real estate under false pretenses, SINCLAIR's

3

misrepresentations and concealments of material facts were the mechanisms which: (1) caused a material adverse change in the lenders' collateral positions resulting in a default under the mortgages, (2) caused the lenders financial losses, and (3) caused the lenders administrative and legal fees, costs, and expenses.

The Grand Jury further charges:

### Counts 1-7
(Bank Fraud – 18 U.S.C. 1344(2))

14. The allegations in paragraphs 1 through 13 of this Superseding Indictment are re-alleged and incorporated by reference herein.

15. From in or around December 2005, through in or around September 2006, and on or about each of the dates set forth below, in the Northern District of Ohio, Eastern Division, and elsewhere, SINCLAIR, aided and abetted by S.B., knowingly executed and attempted to execute a scheme to obtain any of the moneys, funds, credits, assets, securities and other property owned by and under the custody and control of the financial institutions listed below by means of false and fraudulent pretenses, representations, and promises, with each real estate transfer constituting a separate substantive count.

| Count | Street Address | City & State | Date of Transfer | Lender |
|---|---|---|---|---|
| 1 | xxxx Tyler Dr. | Canfield, OH | 12/12/05 | Wells Fargo Bank |
| 2 | xxxx Alderwood Dr. | Canfield, OH | 12/15/05 | Chase Home Finance |
| 3 | xxx Orlo Ln. | Youngstown, OH | 02/02/06 | Wells Fargo Bank |
| 4 | xxxx Hitchcock Rd. | Youngstown, OH | 05/26/06 | Huntington National |
| 5 | xx Walnut St. | Struthers, OH | 09/01/06 | Wells Fargo Bank |
| 6 | xxxx Glenwood Ave. | Youngstown, OH | 09/07/06 | Ohio Savings & Loan |
| 7 | xxxx Woodridge Dr. | Austintown, OH | 09/25/06 | Bank of America |

All in violation of Title 18, United States Code, Sections 1344(2) and 2.

The Grand Jury further charges:

## Count 8
(Bank Fraud – 18 U.S.C. 1344(1))

16. The allegations in paragraphs 1 through 13 of this Superseding Indictment are re-alleged and incorporated by reference herein.

### xxxx Tyler Drive

17. Pursuant to Title 12, § 1701j-3(d)(8) of the United States Code (Garn-St. Germain Depository Institution Act, or Garn-St. Germain), a homeowner could transfer title to his or her home to an inter vivos trust without defaulting under a mortgage's due on sale clause if the homeowner continued to occupy the home and was also a beneficiary under the trust.

18. On or about June 13, 2003, E.B. and B.B. executed and delivered a note and mortgage to Wells Fargo Home Mortgage, Inc. (Wells Fargo), an FDIC insured. Their mortgage contained a due on sale clause, on page 11 at paragraph 18, giving Wells Fargo the right to demand full payment of the mortgage's unpaid balance upon a transfer of title without Wells Fargo's prior written consent.

19. On or about November 30, 2005, SINCLAIR prepared trust documents for E.B. and B.B. regarding the transfer of their home to the xxxx Tyler Drive Trust, which he created and controlled through NI. E.B. and B.B. were Beneficiaries under the xxxx Tyler Drive Trust, each with a 50% interest. E.B. and B.B. also executed an Assignment of Beneficial Interest transferring all of their beneficial interests in the xxxx Tyler Drive Trust to ND.

20. On or about December 12, 2005, E.B. and B.B. signed a Warranty Deed transferring title to their home to xxxx Tyler Drive Trust, Newport Investments, L.L.C., as Trustee. The HUD-1 related to this transfer described it as an "Assumed Mortgage" and noted that E.B. and B.B. were to receive $11,591 from the transaction.

5

21. In or around December 2005, SINCLAIR knowingly executed and attempted to execute, a scheme and artifice to defraud Wells Fargo by sending, and causing to be sent, a "Notice to Lender" to Wells Fargo representing that the transfer of E.B. and B.B. real estate to the xxxx Tyler Drive Trust was an inter vivos trust "pursuant to Garn-St. Germain." SINCLAIR then well knew that E.B. and B.B. had and were about to vacate their home and that they had also assigned their beneficial interests under the xxxx Tyler Drive Trust to ND. SINCLAIR's false representation to Wells Fargo concealed from Wells Fargo the true nature of the title transfer, which was a default under the mortgage's due on sale clause.

22. As a result of SINCLAIR's false representations, Wells Fargo was unable to exercise its rights under the mortgage and incurred additional administrative and legal fees, costs, and expenses.

All in violation of Title 18, United States Code, Sections 1344(1) and 2.

The Grand Jury further charges:

## Count 9
(Bank Fraud – 18 U.S.C. 1344(1))

23. The allegations in paragraphs 1 through 13 of this Superseding Indictment are re-alleged and incorporated by reference herein.

### xx Walnut Street

24. On or about March 20, 2006, H.S. executed and delivered a note to a predecessor in interest to Wells Fargo Bank, N.A. (Wells Fargo NA), an FDIC insured.

25. On or about March 20, 2006, H.S. and T.S. executed and delivered a mortgage to a predecessor in interest to Wells Fargo NA. Their mortgage contained a due on sale clause, on page 5 at paragraph 9(b), giving Wells Fargo NA the right to demand full payment of the

mortgage's unpaid balance upon a transfer of title without prior approval. The mortgage had an additional provision, on page 4 at paragraph 5, requiring H.S. and T.S. to occupy xx Walnut Street as their principal residence.

26. On or about September 1, 2006, SINCLAIR prepared trust documents for H.S. and T.S. regarding the transfer of their home to the xx Walnut Street Trust, which he created and controlled through NI. H.S. and T.S. were Beneficiaries under the xx Walnut Street Trust, each with a 50% interest. H.S. and T.S. also executed an Assignment of Beneficial Interest transferring all their beneficial interests in the xx Walnut Street Trust to ND.

27. On or about September 1, 2006, H.S. and T.S. signed a Warranty Deed transferring title to their home to xx Walnut Street Trust, Newport Investments, L.L.C., as Trustee. The HUD-1 related to this transfer stated "TAXES AND MORTGAGES ARE ASSUMED."

28. On or about April 10, 2007, SINCLAIR knowingly executed and attempted to execute, a scheme and artifice to defraud Well Fargo NA by sending, and causing to be sent, an "authorization" and "power of attoreny" (sic) which H.S. and T.S. signed on September 1, 2006. SINCLAIR then well knew that H.S. and T.S. transferred title to their home to the xx Walnut Street Trust, vacated their home, and assigned their beneficial interests under the xx Walnut Street Trust to ND. SINCLAIR's communications concealed, and caused the sellers to conceal, material facts from Wells Fargo NA which included: (1) H.S. and T.S. executed an Assignment of Beneficial Interest transferring their beneficial interest in the Walnut Street Trust to ND, and (2) H.S. and T.S. no longer occupied their home.

29. As a result of SINCLAIR's concealment of material facts, Wells Fargo NA was unable to exercise its rights under the mortgage and incurred additional administrative and legal fees, costs, and expenses.

All in violation of Title 18, United States Code, Sections 1344(1) and 2.

The Grand Jury further charges:

## Count 10
(Bank Fraud – 18 U.S.C. 1344(1))

30. The allegations in paragraphs 1 through 13 of this Superseding Indictment are re-alleged and incorporated by reference herein.

### xxx Orlo Lane

31. On or about February 24, 2003, J.H. and D.H. executed and delivered a note and mortgage to a predecessor in interest to Wells Fargo Bank, N.A. (Wells Fargo NA), an FDIC insured.

32. The mortgage contained a due on sale clause, on page 4 at paragraph 9(b), giving Wells Fargo NA the right to demand full payment of the mortgage's unpaid balance upon a transfer of title without prior approval. The mortgage had an additional provision, on page 3 at paragraph 5, requiring J.H. and D.H. to occupy xxx Orlo Lane as their principal residence.

33. On or about February 2, 2006, SINCLAIR prepared trust documents for J.H. and D.H. regarding the transfer of their home to the xxx Orlo Lane Trust, which he created and controlled through NI. J.H. was the sole 100% Beneficiary under the xxx Orlo Lane Trust. J.H. also executed an Assignment of Beneficial Interest transferring all of his beneficial interests in the xxx Orlo Lane Trust to K.S.

34. On or about February 2, 2006, J.H. signed a Warranty Deed transferring title to their home to xxx Orlo Lane Trust, Newport Investments, LLC, as Trustee. The HUD-1 related to this transfer stated "ASSUMED MORTGAGE."

35. In and around December 6, 2007, SINCLAIR knowingly executed and attempted to execute, a scheme and artifice to defraud Well Fargo NA by sending, and causing to be sent, an "authorization and/or power of attorney/court order". SINCLAIR then well knew that J.H. and D.H. transferred title to their home to the xxx Orlo Lane Trust, vacated their home, and assigned their beneficial interests under the xxx Orlo Lane Trust to K.S. SINCLAIR's communications concealed, and caused the sellers to conceal, material facts from Wells Fargo NA which include: (1) J.H. and D.H. executed an Assignment of Beneficial Interest transferring their beneficial interest in the Orlo Street Trust to K.S., and (2) J.H. and D.H. no longer occupied their home.

36. As a result of SINCLAIR's concealment of material facts, Wells Fargo NA was unable to exercise its rights under the mortgage and incurred additional administrative and legal fees, costs, and expenses.

All in violation of Title 18, United States Code, Sections 1344(1) and 2.


The Grand Jury further charges:

### Count 11
(Bank Fraud – 18 U.S.C. 1344(1))

37. The allegations in paragraphs 1 through 13 of this Superseding Indictment are re-alleged and incorporated by reference herein.

### xxxx Hitchcock Road

38. On or about April 24, 2003, C.T. executed and delivered a note and mortgage to a predecessor in interest to The Huntington National Bank (Huntington), an FDIC insured.

39. The mortgage contained a due on sale clause, on page 9 at paragraph 18, giving Huntington the right to demand full payment of the mortgage's unpaid balance upon a transfer of title without prior written consent. The mortgage had an additional provision, on page 5 at paragraph 6, requiring C.T. to occupy xxxx Hitchcock Road as her principal residence.

40. On or about May 25, 2006, SINCLAIR prepared trust documents for C.T. regarding the transfer of her home to the xxxx Hitchcock Road Trust, which he created and controlled through NI. C.T. was the sole 100% Beneficiary under the xxxx Hitchcock Road Trust. C.T. also executed an Assignment of Beneficial Interest transferring all of her beneficial interests in the xxxx Hitchcock Road Trust to ND.

41. On or about May 26, 2006, C.T. signed a Warranty Deed transferring title to her home to xxxx Hitchcock Road Trust, Newport Investments, LLC, as Trustee. The HUD-1 related to this transfer stated "EST. ASSUMED MTG."

42. On or about November 13, 2007, SINCLAIR knowingly executed and attempted to execute, a scheme and artifice to defraud Huntington by sending, and causing to be sent, a cover letter dated March 16, 2007, an "Authorization to Release Information," and a "Limited Power of Attorney" which C.T. signed. SINCLAIR then well knew that C.T. transferred title to her home to the xxxx Hitchcock Road Trust, vacated her home, and assigned her beneficial interests under the xxxx Hitchcock Road Trust to ND. SINCLAIR's communications concealed, and caused the sellers to conceal, material facts from Huntington which include: (1) C.T.

executed an Assignment of Beneficial Interest transferring her beneficial interest in the Hitchcock Trust to N.D., and (2) C.T. no longer occupied her home.

43. As a result of SINCLAIR's concealment of material facts, Huntington was unable to exercise its rights under the mortgage and incurred additional administrative and legal fees, costs, and expenses.

All in violation of Title 18, United States Code, Sections 1344(1) and 2.

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.