# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. 4:15CR155 |
| ) | |
| PLAINTIFF, ) | JUDGE SARA LIOI |
| ) | |
| vs. ) | |
| ) | MEMORANDUM OPINION |
| R. ALLEN SINCLAIR, ) | |
| ) | |
| DEFENDANT. ) | |

Before the Court are two motions filed by defendant R. Allen Sinclair. First, defendant moves to dismiss the charges in the superseding indictment for failure to state an offense for bank fraud under 18 U.S.C. § 1334. (Doc. No. 52 (Motion to Dismiss Superseding Indictment ["MTD SI"]).) The government opposes the motion. (Doc. No. 59 (Opposition to Defendant's Motion to Dismiss Superseding Indictment ["Opp'n to MTD SI"])), and defendant has filed a reply. (Doc. No. 60 ("Reply").) Further, both sides filed supplemental briefs. (Doc. No. 63 (Defendant's Notice of Supplemental Authority); Doc. No. 64 (Government's Response to Defendant's Notice of Supplemental Authority).) Defendant also moves, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(ii), for discovery of the recordings of certain instructions provided to the grand jury. (Doc. No. 23 (Motion for Discovery of Selected Grand Jury Recordings ["Mot. for Disc."]).) The government opposes this motion, as well (Doc. No. 32 (Response in Opposition to Defendant's Motion for Discovery of Selected Grand Jury Recordings ["Opp'n to Mot. for Disc."])), and defendant has filed a reply. (Doc. No. 39 (Reply to Motion for Discovery).) The Court held a hearing on the motion to dismiss on December 31, 2015, and, at the conclusion of

the hearing, the Court took the matter under advisement.

## I. BACKGROUND

On April 28, 2015, the government filed an indictment against defendant charging him with twelve counts of bank fraud, in violation of 18 U.S.C. § 1344(2). (Doc. No. 3 (Indictment ["Ind."]).) The indictment provided that defendant, a licensed attorney, orchestrated a scheme whereby he utilized real estate investment companies under his control to coordinate the fraudulent transfers of residential real estate properties. (Ind. ¶¶ 3, 14, 15.) As originally charged, the indictment provided that defendant persuaded homeowners ("sellers") with outstanding mortgages to transfer title to their properties to land trusts created and controlled by defendant. Defendant allegedly misled the sellers into believing that the land trusts had assumed the mortgage loans on their properties, but, in fact, the sellers remained liable on the mortgages. (*Id*. ¶ 14.) After defendant made several minimal monthly payments, he would abandon the properties, leaving the sellers liable for the balance of the mortgages. "As a result, the mortgage loans went into default, which caused substantial losses to many of the lenders and federal agencies that insured the loans." (*Id*.) The twelve counts in the indictment related to twelve land transfers that took place during the period of the scheme between December 2005 and March 2007, and a chart referencing these purchases was included in the charging instrument. (*Id*. at 13.)

Defendant moved to dismiss the indictment, challenging its sufficiency on the basis that it failed to allege facts that would establish that the charged scheme to defraud was designed to obtain property owned by, or under the control of, a financial institution, as is required by 18 U.S.C. § 1344(2). (Doc. No. 22 (Motion to Dismiss ["MTD"]).) After the government filed its opposition to the motion, the Court conducted a hearing on the motion on

October 21, 2015. At the conclusion of the hearing, the Court took the matter under advisement, but not before the government announced that it intended to file a superseding indictment that would charge offenses under both § 1344(2) and § 1344(1).

On November 10, 2015, the government issued a superseding indictment against defendant. (Doc. No. 45 (Superseding Indictment ["SI"]).) The new charging instrument only references seven of the twelve properties identified in the original indictment. Counts 1 through 7 charge bank fraud under 18 U.S.C. § 1344(2). Each count involves a separate property, and a chart of the properties is embedded in the charging instrument. (SI at 227.) Counts 8-11 charge bank fraud under 18 U.S.C. § 1344(1). The properties at issue in these last four counts are also charged under § 1344(2).[1]

Though presented in a slightly different format (and with some additional supporting facts), the superseding indictment alleges the same fraudulent scheme. With respect to the sellers, the superseding indictment alleges that, in reliance on defendant's false statements that his trusts would assume the mortgages on their properties, the sellers "vacated their residences, moved into other homes, obligated themselves to new mortgages and believed they were relieved from their prior mortgage obligations." (SI ¶ 8.) The new charging instrument further provides that defendant used the trusts to "disguise unauthorized assumptions of the mortgages as he did not seek the lenders' prior written consent in compliance with the mortgages' terms and conditions. In some instances, [defendant] also had the sellers assign their beneficial interest in the trusts back to [defendant's companies], thereby stripping the sellers of any remaining interests in their real estate. Through this conduct, [defendant] took the lenders'

---

[1] The counts in which the properties are the same are, respectively, Counts 1 and 8, Counts 3 and 10, Counts 4 and 11, and Counts 5 and 9.

collateral." (*Id*. ¶ 9.) The sellers eventually defaulted on their mortgages, and "the lenders sent default notices to [defendant] and eventually instituted foreclosure proceedings." (SI ¶ 12.) After the properties went into default, the bank victims "enforced their security interests in their collateral through foreclosure proceedings." (*Id*. ¶ 13.) In connection with these proceedings, the bank victims incurred administrative and legal fees, costs, and expenses. (*Id*. ¶¶ 13, 22, 29, 36, 43.)

Following the filing of the superseding indictment, the Court permitted defendant to withdraw his original motion to dismiss and file a new motion that would address the charges in the superseding indictment. In his renewed motion, defendant, once again, argues that the government has failed to charge facts that would support a finding that he engaged in a fraudulent scheme to obtain bank property, as required for the counts under 18 U.S.C. § 1344(2). He also argues that the counts charging a violation of § 1344(1) are equally deficient because the attending facts do not support a finding that he was involved in a scheme to defraud a financial institution.

## II. DEFENDANT'S MOTION TO DISMISS

### A. Standard of Review

Defendant's motion to dismiss challenges the sufficiency of the superseding indictment. Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires that an indictment be a "plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." Fed. R. Crim. P. 7(c)(1); *see United States v. Blandford*, 33 F.3d 685, 704 (6th Cir. 1994) (The Sixth Amendment requires an indictment to "inform the defendant of 'the nature and cause of the accusation.'") (quoting *United States v. Piccolo*, 723 F.2d 1234, 1238 (6th Cir. 1983) (en banc)).

"An indictment is generally sufficient if it 'fully, directly, and expressly . . . set[s] forth all the elements to constitute the offense intended to be punished." *United States v. Kuehne*, 547 F.3d 667, 696 (6th Cir. 2008) (quoting *United States v. Douglas*, 398 F.3d 407, 411 (6th Cir. 2005)). "In particular, the indictment must: (1) 'set out all of the elements of the charge[d] offense and must give notice to the defendant of the charges he faces[,]' and (2) 'be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts." *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007) (quoting *Douglas*, 398 F.3d at 413); *see United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 176 (6th Cir. 1992) (citations omitted). "'An indictment will usually be sufficient if it states the offense using the words of the statute itself, as long as the statute fully and unambiguously states all the elements of the offense.'" *McAuliffe*, 490 F.3d at 531 (quoting *Superior Growers Supply*, 982 F.2d at 176). However, the recitation of the statutory language "'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description with which he is charged.'" *Id.* (quoting *Superior Growers Supply*, 982 F.2d at 176) (further quotation marks and citation omitted). Furthermore, "[t]o be legally sufficient, the indictment must assert facts which in law constitute an offense; and which, if proved, would establish prima facie the defendant's commission of that crime." *Superior Growers Supply*, 982 F.2d at 177 (quotation marks and citations omitted).

### B. The Bank Fraud Statute

As set forth above, defendant is charged with eleven counts of bank fraud. The bank fraud statute, 18 U.S.C. § 1344, provides:

Whoever knowingly executes, or attempts to execute a scheme or artifice—

    (1)    to defraud a financial institution; or

    (2)    to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of a financial institution by means of false or fraudulent pretenses, representations, or promise;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

Defendant is charged under both prongs of the statute. The first prong requires proof that: (1) the defendant knowingly executed or attempted to execute a scheme to defraud a financial institution; (2) the defendant did so with intent to defraud; and (3) the financial institution was insured by the Federal Deposit Insurance Corporation. *United States v. Warshak*, 631 F.3d 266, 312 (6th Cir. 2010) (quotation marks and citation omitted); *United States v. Reaume*, 338 F.3d 577, 580 (6th Cir. 2003) (citing *United States v. Everett*, 270 F.3d 986, 989 (6th Cir. 2001)). In *United States v. Gordon*, 493 F. App'x 617, 629 (6th Cir. 2012), a panel of the Sixth Circuit held that, "[c]onsistent with the common law definition of 'fraud,' § 1344(1) requires a misrepresentation or concealment of material fact." (quotation marks and citation omitted).

The Supreme Court recently addressed the elements required to establish a violation of the second prong of the bank fraud statute. In *Loughrin v. United States*, --U.S.--, 134 S. Ct. 2384, 2389, 189 L. Ed. 2d 411 (2014), the Court held that the second clause requires two elements:

> [f]irst, the clause requires that the defendant intend "to obtain any of the moneys . . . or other property owned by, or under the custody or control of, a financial institution." (We refer to that element, more briefly, as intent "to obtain bank property.") And second, the clause requires that the envisioned result—*i.e.*, the obtaining of bank property—occur "by means of false or fraudulent pretenses, representations, or promises."

(internal record cites omitted). The Court rejected the defendant's argument that the second clause of the bank fraud statute required a third element: that the defendant intended to defraud a bank. *Id*. at 2387. The Court reasoned that the two sections of the statute identified distinct offenses—the first targeting schemes to defraud a bank, while the second penalizes schemes to obtain property owned by or held by the bank via misrepresentations to others. *Id*. at 2390; *see United States v. Shaw*, 781 F.3d 1130, 1134 (9th Cir. 2015) (noting that, in *Loughrin*, the "Supreme Court effectively required courts to treat the two clauses separately, holding that while they overlap substantially, the clauses are disjunctive and establish distinct offenses") (citing *Loughrin*, 134 S. Ct. at 2390, 2390 n.4).

### C. Section 1344(2)—Obtaining Bank Property

Counts 1-7 charge a violation of § 1344(2). Defendant argues that the first element—property owned by or controlled by a financial institution—is missing because the banks did not "own" the property; rather, it was owned by the sellers. (MTD SI at 278.) Citing Ohio and bankruptcy law, defendant posits "a mortgage of real property is a security for a debt and gives the mortgagee no right of possession or concern." (*Id*.) (quotation marks and citation omitted). In response, the government insists that defendant "fails to understand that his actions created a default under applicable loan documents, and that default activated property rights of the [b]ank [v]ictims in real estate collateral and cash collateral." (Opp'n to MTD SI at 317.)

It is the government's position that defendant's scheme involved the acquisition of the bank victims' collateral in the purchased residential properties. When the sellers purchased their residential properties, they obtained loans, which were evidenced by promissory notes, and, through a mortgage, each promissory note was secured by collateral, namely the residential properties, themselves. The mortgages, in turn, conveyed a property interest to the banks because

7

the sellers granted the banks security interests in the collateral, which constituted bank property under § 1344(2).

The Court begins by recognizing that the statutory phrase "property owned by . . . a financial institution" is to be interpreted in such a way as to give effect to Congress's purpose in protecting financial institutions from fraud. *See Everett*, 270 F.3d at 991 ("[T]he purpose of § 1344 is to protect the federal government's interest as an insurer of financial institutions.") (citation omitted); *United States v. Colton*, 231 F.3d 890, 908 (4th Cir. 2000) ("But, like the term 'defraud', the scope of property interests protected by the bank fraud statute is defined broadly.") (citation omitted); *United States v. Bonallo*, 858 F.2d 1427, 1432 (9th Cir. 1988) ("The legislative history of the bank fraud statute strongly indicates that Congress intended that it have the same broad scope as the mail fraud statute, 18 U.S.C. § 1341 *et seq*."); *United States v. Rice*, No. 1:11-CR-15, 2011 WL 3841973, at *1 (E.D. Tenn. Aug. 30, 2011) ("It was the intent of Congress that the statute be broad so as to reach a wide range of fraudulent crimes committed against federal institutions."); *see also McNally v. United States*, 483 U.S. 350, 356, 107 S. Ct. 2875, 97 L. Ed. 2d 292 (1987) (the Supreme Court, analyzing the related mail fraud statute, held that the scope of property interests protected is to be construed fairly widely).

In *United States v. Mancuso*, 42 F.3d 836 (4th Cir. 1994), the Fourth Circuit relied on a "liberal construction" approach in finding that a scheme involving a bank's security interest qualified as bank fraud. The defendants had obtained certain loans from a bank, which they had secured with life insurance policies, real property mortgages, and real property chattel. The defendants also obtained a revolving line of credit from the bank to finance their business, which was secured by liens that gave the bank the right to receive the proceeds from certain job contracts. Unbeknownst to the bank, defendants approached the customers of these job contracts,

8

and requested that they make the payments to them, bypassing the bank and effectively depriving the bank of the secured proceeds.

On appeal, defendants argued that the bank had no property rights in the diverted funds, insisting that "the evidence 'showed no more than a standard commercial arrangement creating well-recognized contractual rights,' and that this [did] not evince the ownership, custody or control necessary under the [bank fraud] statute." *Id.* at 845. The Fourth Circuit rejected this argument, reasoning that:

> [t]he commercial arrangements under these facts include an assignment of rights, including an acknowledgement signed by the account debtor, and a security interest in the contract. It is impossible to accept defendants' assertion that the bank had no interest in the checks that [defendants' customers] sent directly to [defendants' business]. After the assignments of rights, [defendants'] interest in the proceeds of the contracts was extinguished, and [the bank] held an interest in those funds. As a right that could be assigned, traded, bought, and otherwise disposed of, it is clear that the rights fall within the universe of property that will support the bank fraud convictions.

*Id.*; *see Colton*, 231 F.3d at 907-08 (fraudulent scheme to deprive bank of security interest in property was sufficient to satisfy the requirement that the scheme be designed to obtain a financial institution's property); *see also United States v. France,* 611 F. App'x 847, 848 (6th Cir. 2015) (conviction for bank fraud affirmed, without comment, where government's theory was that defendant "collected . . . real estate commissions, his co-conspirators split the mortgage overages, and the lenders were left to foreclose on houses worth substantially less than the debts they secured").

Here, various financial institutions identified in the superseding indictment had security interests in the properties defendant purchased as part of the alleged fraudulent scheme. Because these security interests could be "assigned, traded, bought, and otherwise disposed of," they constitute "property" of a financial institution as that term is broadly defined for purposes of

bank fraud. Defendant challenges such a broad interpretation of the phrase "property," and devotes considerable time to discussing the treatment of such security interests under Ohio and bankruptcy law. (MTD SI at 278-79.) Applying this law, defendant argues that the mortgages did not extend to the alleged bank victims a possessory interest in the property, and it cannot, therefore, be considered bank property.

Defendant's position lacks merit for two reasons. First, the Supreme Court in *Loughrin* counseled against taking such a voyage into civil waters. Recognizing the extent of the statute's reach, the Court noted that "the broad language in § 1344(2) describing the property at issue—'property owned by or under the custody or control of' a bank—appears calculated to avoid entangling courts in technical issues of banking law about whether the financial institution or, alternatively, a depositor would suffer the loss from a successful fraud."[2] *Laughri*n, 134 S. Ct. 2395 n.9 (citation omitted).

Second, while the government maintains that a security interest fits nicely within the broad interpretation afforded the term "bank property," it makes clear that it has not charged as bank property any unrealized future security interest. Instead, the "bank property" charged in the superseding indictment is the tangible collateral that secured that interest which became the property of the bank victims when the due on sale clause was triggered. (Opp'n MTD SI at 334-35; *see* SI ¶ 9.)

---

[2] Defendant's argument that the Use Guide to the Sixth Circuit Pattern Instructions supports a more narrow interpretation of the term "bank property" is equally unavailing. Defendant posits that the fact that the decision to replace some of the types of property identified in the statute—funds, credits, assets, securities—with the phrase "money or property," is a clear indication that "the only things a defendant can scheme to obtain under 18 U.S.C. § 1344(s) are the bank's money or the bank's property." (MTD SI at 279.) In actuality, the comment to the Use Note provides that these types of property "were omitted because they are adequately covered by the simpler phrase 'money or property.'" Sixth Circuit Criminal Pattern Jury Instruction 10.03 Use Note cmt. If anything, the comment supports the notion that the phrase "money or other property" is broad enough to cover a wide variety of property rights, including security interests.

At the hearing, defense counsel argued that the triggering of the due on sale clauses did not result in a default, but rather only resulted in the bank having the *option* to call in the loan that secured the mortgage. Relying on Ohio mortgage law, defense counsel explained that a bank would have to take several steps in order to effect a default under the mortgage agreement. (*See* MTD SI at 278-79.) Defense counsel further noted that the superseding indictment did not plead that each bank took these steps or that a default had been triggered.

Once again, defendant's position is deficient because, under *Laughrin*, the Court need not wade knee-deep into the intricacies of state mortgage law to interpret the bank fraud statute. Applying a common sense approach to indictment interpretation, *see United States v. Maney*, 226 F.3d 660, 663 (6th Cir. 2000), it is clear that the superseding indictment specifically alleges that defendant "took the lenders' collateral." (SI ¶ 9.) Regardless of what steps each alleged bank victim needed to take to secure its property interests as against the mortgagors and other third parties, such as junior lienholders, the bank had a recognizable property interest in the real estate that defendant caused to be transferred to the trusts he set up to facilitate the alleged fraud. Further, the superseding indictment clearly alleges that defendant obtained that bank property as a consequence of the fraudulent scheme described in the first seven counts of the charging instrument. (*Id*.) The superseding indictment charges that defendant caused the properties to be transferred to his trusts, triggering the due on sale clauses and activating the banks' interest in the property as collateral. (SI ¶¶ 7, 13, 18, 21, 25-27, 32-34, 39-41.) By transferring the property to his trusts, defendant deprived the bank of its property, and by disguising the true nature of the transfers, defendant prevented the bank from taking immediate action to protect these property interests. (*See id*. ¶ 9.) This level of detail is more than sufficient to set forth facts that, if proven beyond a reasonable doubt, would establish bank fraud under §

1344(2).³

The bank property charged in the superseding indictment may not be the kind that is typically involved in a bank fraud case—such as where the bank is deceived into honoring a forged check—it nonetheless meets the broad definition of property set forth in the bank fraud statute. *See United States v. Ely*, 142 F.3d 1113, 1119 (9th Cir. 1997) (noting that "[t]o deprive a bank of property you do not have to move cash out of its vaults[,]" and finding that defendant's efforts to manipulate the bank so that it would not collect loans and interest due it satisfied the bank fraud statute).

### D. Section 1334(1)—Defrauding a Financial Institution

Counts 8-11 charge defendant with engaging in a scheme to defraud a financial institution under § 1334(1). "The term 'scheme to defraud' is not capable of precise definition. Fraud instead is measured in a particular case by determining whether the scheme demonstrated a departure from fundamental honesty, moral uprightness, or fair play and candid dealings in the general life of the community." *Gordon*, 493 F. App'x at 629 (quotation marks and citations omitted); *see United States v. Brandon*, 298 F.3d 307, 311 (4th Cir. 2002) ("The 'scheme to defraud' clause of Section 1344(1) is to be interpreted broadly[.]") (citation omitted). While not

---

³ The government also suggests that a second type of bank property is charged in the superseding indictment—monies from rental arrangements associated with some of the properties. The superseding indictment charges that defendant stopped making payments on the pre-existing loans on the property, while continuing to receive "rental payments from land-contract tenants placed in the homes by" defendant or his associate. (SI ¶ 11.) Defendant, once again relying on state law, suggests that any rental income generated by the property belonged to the homeowners and not the bank. (MTD SI at 280 (citations to Ohio law omitted).) But as was the case with the collateral, once the property was transferred, the bank had an identifiable property interest in the real estate and any income stream generated from it. *See, e.g., Mancuso*, 42 F.3d at 845 (finding that defendant took bank property when it diverted payments that belonged to the bank following an assignment of rights made by the mortgagor on certain contracts). The superseding indictment charges that defendant took the real estate, as well as the down payments and rental payments flowing from the real estate. Using the common sense construction standard for indictment construction, the Court finds that the superseding indictment has set forth facts that, if proven at trial, would establish that defendant obtained, or devised a scheme to obtain, bank property.

suggesting that his actions, as charged, were honest and candid, defendant argues that his actions did not constitute a scheme to defraud a bank because he did not *directly* expose the bank to a risk of loss, nor did he provide false information or conceal anything he was legally required to reveal to a bank. (MTD SI at 281-82 (emphasis in original).)

While the government need not show that the financial institution suffered an actual loss, or even that it was exposed to a risk of loss to establish the crime of bank fraud, "'risk of loss' is . . . one way of establishing intent to defraud in bank fraud cases." *United States v. Hoglund*, 178 F.3d 410, 413 (6th Cir. 1999). When employing this avenue for demonstrating intent, the government is not required to show that the defendant intended to defraud the bank. "[T]o have specific intent required for bank fraud the defendant need not have put the bank at risk of loss in the usual sense or intended to do so. It is sufficient if the defendant in the course of committing fraud on *someone* causes a federally insured bank to transfer funds under its possession and control." *Everett*, 270 F.3d at 991 (rejecting argument that defendant only intended to defraud her client and not the bank) (emphasis in original). Thus, the fact that the intended victims of the charged fraud may have been the sellers who unwittingly transferred their beneficial interest in the mortgaged properties while retaining the liability on the mortgage does not take the charged scheme beyond the reach of the bank fraud statute. *See Warshak*, 631 F.3d at 312-13 (rejecting argument that the fraudulent scheme must "be directed at *an FDIC-insured bank* and not at any other entity or person") (emphasis in original); *Reaume*, 338 F.3d at 581-82 (relying on *Everett* and rejecting argument that defendant did not intend to expose the bank to a risk of loss).

The superseding indictment charges a scheme whereby defendant allegedly defrauded the sellers into transferring title to their properties. The charging instrument further

13

alleges that, in doing so, defendant: "(1) caused a material adverse change in the lenders' collateral positions resulting in a default under the mortgages, (2) caused the lenders financial losses, and (3) caused the lenders administrative and legal fees, costs, and expenses." (SI ¶ 13; *see also* ¶ 22 ("As a result of [defendant's] false representations, Wells Fargo was unable to exercise its rights under the mortgage and incurred additional administrative and legal fees, costs, and expenses."), ¶ 29 (similar), ¶ 36 (similar), ¶ 43 (similar).) The superseding indictment, therefore, sufficiently charges a scheme to defraud *someone* whereby financial institutions are exposed to a risk of loss.

Intent to defraud a financial institution can also be demonstrated by evidence that the defendant realized a financial gain. *United States v. Kerley*, 784 F.3d 327, 343 (6th Cir. 2015) ("Intent to defraud means to act with intent to deceive or cheat for the purpose of causing a financial loss to another or bringing about a financial gain to oneself.") (additional quotation marks and citation omitted). In addition to alleging that the bank victims suffered, at a minimum, a risk of loss, the superseding indictment also specifically alleges that defendant realized a financial gain from the fraudulent scheme. Paragraphs 7-9, and 11 allege that defendant took title to the real estate, and, in some cases, received rental income from the properties, without assuming the mortgages. In doing so, he "br[ought] about a financial gain" for himself. *See Kerley*, 784 F.3d at 343. Thus, the superseding indictment also charges this alternative way to establish defendant's intent, and the charging instrument is sufficient for this additional reason.

### E. Misrepresentations that Advanced the Bank Fraud

Defendant asks the Court to read into the elements of § 1344(1) and (2) the requirement that he have a *direct* relationship with the financial institutions. He argues that, because he had no relationship with the bank victims and owed no legal obligation to disclose

14

anything to them, the connection with the financial institutions is too tangential to support bank fraud charges. (MTD SI at 282-84.) Underscoring the fact that he contracted with the individual sellers (and not the bank), defendant likens the present case to the hypothetical bicyclist in *Loughrin*. In the hypothetical used by the Supreme Court, a woman sells her car to finance the purchase of a bicycle that she uses to take a trip across the Rocky Mountains. Under that scenario, so the hypothetical goes, "no one would say she 'crossed the Rockies by means of a car,' even though her sale of the car somehow figured in the trip she took." *Loughrin*, 134 S. Ct. at 2393.

The Supreme Court noted that, to avoid applying the bank fraud statute to situations where the utilization of the financial institution is as incidental as the cyclist's sale of her car to the cycling trip through the Rocky Mountains, Congress included in § 1344(2) a "relational component: The criminal must acquire (or attempt to acquire) bank property 'by means of' the misrepresentation." *Id*. Similarly, the Sixth Circuit has held that "misrepresentation[s] or concealment[s] of material facts" are also required to set forth a charge under § 1334(1). *See Gordon*, 493 F. App'x at 629 (citing *Neder v. United States*, 627 U.S. 1, 22, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)).

Defendant relies on the Eighth Circuit's decision in *Steffen* as persuasive authority that this direct relationship with the financial institution must carry with it a legal duty to disclose material changes in the relationship. This, however, was not the holding in *Steffen*. As defense counsel conceded in the motion hearing, the court actually held that "fraudulent concealment— without any misrepresentation or duty to disclose—can constitute common-law fraud." *United States v. Steffen*, 687 F.3d 1104, 1114 (6th Cir. 2012). In so ruling, the court drew a distinction between simple nondisclosure, or mere silence in the absence of an affirmative duty to speak,

and active concealment, by which an actor intends to mislead by creating a false impression or representation. *Id.* at 1115 (citation omitted).

Defendant insists that his alleged actions amount to nothing more than simple nondisclosure, and, because he had no duty to disclose any information to the banks, there can be no direct relationship with a financial institution to support the bank fraud charges. He highlights the fact that the relationships at the heart of the charged fraud were between the sellers and their respective lenders. While he cites no Sixth Circuit authority establishing such a requirement, the Court observes that, in addition to the Eighth, other circuits have "recognized that although the existence of an independent disclosure duty 'is relevant and an ingredient' in some fraud prosecutions, such a duty is 'not an essential in all such cases.'" *Colton*, 231 F.3d at 900-01 (quoting *United States v. Allen*, 554 F.2d 398, 410 (10th Cir. 1977) and collecting cases from the Fifth and Seventh Circuits)). "What is essential is proof of a 'scheme or artifice to defraud,' which can be shown by deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or avert further inquiry into a material matter." *Id.* at 901 (rejecting defendant's argument that he could not be convicted of bank fraud without a legal duty to disclose information to the lender, noting that the scheme as charged showed conduct by defendant to hide or mask the fact that the bank was not dealing with an independent third party investor).

Thus, the Court must determine whether the superseding indictment properly charges such a scheme or artifice to defraud by means of material misrepresentations or concealments of a material fact. *See* Sixth Circuit Criminal Pattern Jury Inst. § 10.03 (Bank Fraud) (requiring either the misrepresentation of a material fact or the concealment of a material fact). The focus of this inquiry depends upon the subsection charged, as "[§] 1344(2) targets schemes to obtain property held by the bank *via misrepresentation to a third party*, while §

16

1344(1) penalizes schemes to defraud the bank itself." *Shaw*, 781 F.3d at 1134 (citing *Loughrin*, 134 S. Ct. at 2389-92) (emphasis added).

With respect to § 1344(2), the superseding indictment alleges that defendant "fraudulently represented to the sellers" that the trusts he created would assume the mortgages on the property when, in fact, this was not true. (SI ¶¶ 7-8.) In reliance on this misrepresentation, the sellers transferred title to the property to defendant or the trusts he created and controlled. (*Id*. ¶ 8) These allegations, alone, are sufficient to satisfy the misrepresentation requirement under § 1344(2) for the first seven counts in the superseding indictment by alleging that defendant obtained bank property via material misrepresentations to a third party.

There are additional material misrepresentations and concealments of material facts that support the charges under § 1344(1). Count 8 charges that defendant prepared a trust document that he caused to be sent to the bank victim that falsely represented that the property transfer was pursuant to the Garn-St. Germain Depository Institution Act. (SI ¶ 21.) The effect of such a representation was to make it appear that the homeowner continued to maintain a beneficial interest in the property and was continuing to reside in the home, such that the due on sale clause was not triggered. (*Id*.; *see id*. ¶¶ 17-18.) The superseding indictment further alleges that, as a result of defendant's false representations, the bank victim "was unable to exercise its rights under the mortgage and incurred additional administrative and legal fees, costs, and expenses" (*id*. ¶ 22), thus demonstrating that the misrepresentations were material.

Counts 9-11 allege that defendant engaged in an active concealment of material facts to facilitate the fraud. Specifically, these counts allege that defendant created trust documents transferring the property but concealing from the bank victims that the sellers had executed assignments of beneficial interest in the properties and no longer occupied their homes.

(SI ¶¶ 26, 28, 33, 35, 40, 42.) The active concealment of these material facts prevented the bank victims from exercising their rights under the mortgages and caused the bank victims to incur costs, fees, and expenses. (*Id.* ¶¶ 29, 36, 43.)

Moreover, the superseding indictment contains additional concealments, common to all counts, designed to create a false impression or mislead. Paragraph 9 charges that defendant used the inter vivos trusts he created to "disguise unauthorized assumptions of the mortgages[.]" Paragraph 10 alleges that defendant "attempted to insulate himself and his entities from any liability" by preparing documents that "recharacterized the transactions as 'subject to' transfers." Finally, paragraph 11 alleges that defendant made "mortgage payments for a period of time" on the transferred properties before ceasing these payments. These acts of concealment had the effect of keeping the sellers and the banks in the dark as to the true nature of the property transfers. As such, defendants' alleged acts went well beyond mere silence, constituting affirmative acts and contrivances intended to hide information, deflect suspicion, and prevent the banks from properly investigating the fraud.

The misrepresentations and concealments of material facts alleged in the superseding indictment set forth the means by which bank property was acquired and/or the financial institutions were defrauded. Moreover, unlike the situation in *Loughrin* where the car was truly incidental to the planned cycling trip, the bank victims' property is a fundamental component of the charged scheme. Indeed, it is asserted that the purpose of the fraudulent scheme was to acquire the banks' property. (SI ¶¶ 7, 9, 10, 15.) Under these circumstances, the Court cannot conclude that the alleged bank victims' "involvement in the scheme is . . . wholly fortuitous[.]" *Loughrin*, 134 S. Ct. at 2394.

While it remains to be seen whether the government will be able to establish the

elements of the charged offenses at trial, the Court concludes that the superseding indictment is sufficient to charge offenses under the federal bank fraud statute. Many of defendant's arguments, though couched in terms of pleading insufficiencies, actually address the sufficiency of the evidence that defendant anticipates will be offered at trial. Such arguments are better reserved for a Rule 29 motion at the conclusion of the government's case-in-chief or closing arguments to the jury. *See United States v. Levin*, 973 F.2d 463, 468 n.2 (6th Cir. 1992) (defendants cannot base a motion to dismiss on a sufficiency of the evidence argument) (collecting cases); *United States v. DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000) ("Unless there is a stipulated record . . . a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence.") (citations omitted). Defendant's motion to dismiss, therefore, is denied.

### III. DEFENDANT'S MOTION FOR DISCLOSURE OF GRAND JURY RECORDINGS

Defendant also moves for the disclosure of selected grand jury recordings. Specifically, he seeks disclosure of the "instructions provided to the grand jury when securing the instant indictment, as well as recordings of all statements by the prosecutor to the grand jury about the validity of the charges." (Mot. for Disc. at 115.)

A party seeking disclosure of grand jury material under Rule 6(e) of the Federal Rules of Criminal Procedure must demonstrate a particularized need. *See Douglas Oil Co. v. Petrol Stops NW*, 441 U.S. 221, 222, 99 S. Ct. 1667, 60 L. Ed. 2d 156 (1979). To meet the particularized need standard, a party must establish that: (1) the material sought is necessary to avoid a possible injustice in another judicial proceeding; (2) the need for disclosure outweighs the need for continued secrecy; and (3) the request is structured narrowly to cover only the material needed. *See id.* at 222. The district court has considerable discretion in determining

whether to require disclosure of grand jury proceedings. *See id.* at 223*; In re Antitrust Grand Jury*, 805 F.2d 155, 161 (6th Cir. 1986) (same). "It is clear that [the] burden [of demonstrating the need for disclosure] is a heavy one to overcome." *Lucas v. Turner*, 725 F.2d 1095, 1101 (7th Cir. 1984).

Defendant's only justification for his request for the grand jury transcripts is his belief that the grand jury was instructed incorrectly. He bases this belief on his assessment that the facts, as charged by the government, would not support a conviction for bank fraud. (Mot. for Disc. at 116.) Because the Court has already determined that the factual allegations asserted in the superseding indictment are sufficient to set forth charges under the bank fraud statute, the there is no basis upon which to find that the grand jury was not instructed properly on the law of bank fraud. Defendant has failed, therefore, to meet his burden of demonstrating particularized need for the transcripts, and his motion to require disclosure of the transcripts is denied.

### IV. CONCLUSION

For all of the foregoing reasons, defendant's motion to dismiss the superseding indictment and his motion for disclosure of grand jury transcripts are denied.

**IT IS SO ORDERED**.

Dated: January 18, 2016

　　　　　　　　　　　　　　　　　　　　　　
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**